UNITED STATES of America, Appellee,

v.

**Wade Robert SWANSON, Appellant.**

No. 93–1117.

United States Court of Appeals,. Eighth Circuit.

Submitted Aug. 10, 1993.

Decided Nov. 22, 1993.

, Paul C. Engh, Minneapolis, MN, argued, for appellant.

Andrew Stephen Dunne, Minneapolis, MN, argued, for appellee.

Before JOHN R. GIBSON, MAGILL, and LOKEN, Circuit Judges.

**1356**

MAGILL, Circuit Judge.

Wade R. Swanson (Swanson) appeals a jury verdict and district court[1] order sentencing him to 168 months' imprisonment under 21 U.S.C. § 841 for conspiracy to manufacture and distribute marijuana and 18 U.S.C. § 1956 for money laundering. On appeal, Swanson seeks reversal for a series of evidentiary rulings as well as allegations of prosecutorial misconduct. We affirm.

## I. BACKGROUND

On February 7, 1991, officers executed a search warrant at the Rush City Farm (the Farm) and discovered one of the largest and most sophisticated indoor marijuana grow operations ever uncovered by enforcement officials in Minnesota. The officers seized approximately 638 marijuana plants, sophisticated indoor growing equipment, and financial records and tax statements in the names of Brad Johnson (Johnson) and Wade Swanson. Swanson was indicted on six counts for the manufacture and distribution of marijuana and money laundering in connection with the Farm.

Johnson pleaded guilty and agreed to cooperate in the government investigation. Johnson took part in a taped undercover meeting with Swanson and testified for the government at trial. Johnson implicated Swanson as a member of a three-year, three-person partnership—which included Johnson, Swanson, and Robert Miller (Miller)—to grow marijuana at the Farm. The government also produced a videotape recording of an undercover meeting in which Swanson told Johnson "it's our word against everybody else's" and "just tell them we were growing tomatoes." In addition, three government witnesses testified at trial that Swanson attempted to threaten and intimidate each of them from cooperating with the police or testifying at trial.

1. The Honorable David S. Doty, United States District Judge for the District of Minnesota.

2. After Swanson pleaded guilty to the 1987 Incident, the Colorado district court deferred Swanson's sentence and continued judgment on Swanson for two years. The Colorado court also placed Swanson on probation for two years. Af-

At trial, Swanson claimed that Miller and Johnson coerced Swanson's participation in the Farm. Specifically, Swanson testified that Johnson and Miller on numerous occasions threatened to kill him and his family if he refused to cooperate in the venture. After an eight-day trial, the trial court instructed the jury on the coercion defense. The jury, after deliberation, found Swanson guilty on all six counts.

## II. DISCUSSION

### A. Admission of Swanson's Prior Guilty Plea

■ Swanson first seeks reversal of his conviction because the trial court admitted evidence of a guilty plea by Swanson in connection with a 1987 felony menacing incident (1987 Incident) in Colorado.[2] Swanson argues, for the first time on appeal, that evidence of the 1987 Incident was inadmissible because his guilty plea does not qualify as a "conviction" as required by Federal Rule of Evidence 609(a).

■ Whether evidence of a prior conviction should be admitted is left to the discretion of the trial court. *United States v. Reeves,* 730 F.2d 1189, 1196 (8th Cir.1984). A court should admit evidence of a conviction under Rule 609(a)(1) if the court determines that "the probative value of admitting this evidence outweighs the prejudicial effect to the defendant." Fed.R.Evid. 609(a)(1).[3] An appellate court will only overturn a trial court's decision of what evidence to admit if the trial court abuses its discretion. *United States v. Rogers,* 939 F.2d 591, 594 (8th Cir.), *cert. denied,* — U.S. —, 112 S.Ct. 609, 116 L.Ed.2d 632 (1991).

■ In addition, where an appellant has not properly preserved an issue for review, this court reviews only for plain error. *United States v. Helmel,* 769 F.2d 1306, 1316–17 (8th Cir.1985). Under plain error review,

ter the two-year period, the court terminated the deferred judgment and dismissed the case. Appellant's Br. at Addendum 2–1 to 2–5.

3. The trial court specifically made this finding on the record. Tr.Vol. VI at *19–20.* Appellant has not challenged this finding on appeal.

"an error not identified by a contemporaneous objection will be grounds for reversal only if the error prejudices the substantial rights of the defendant and would result in a miscarriage of justice if left uncorrected." *United States v. Carey*, 898 F.2d 642, 644 (8th Cir.1990) (citing *United States v. Young*, 470 U.S. 1, 15, 105 S.Ct. 1038, 1046, 84 L.Ed.2d 1 (1985)).

At trial, Swanson argued that the 1987 Incident was inadmissible because the Colorado district court previously had dismissed the case against him. Swanson argued that the dismissal of the case after his probationary period was equivalent to a pardon, annulment or other procedure that precludes admission of evidence under Rule 609(c). Tr. Vol. VI at 4, 8–9, 14; *see* Fed.R.Evid. 609(c). The trial court properly held that it could not exclude evidence of the 1987 Incident based on Rule 609(c) because Swanson did not provide any evidence that the dismissal of the case was based on a finding of innocence or rehabilitation. *See* Fed.R.Evid. 609(c); *cf. Brown v. Frey*, 889 F.2d 159, 171 (8th Cir. 1989) (holding that evidence of conviction properly excluded where convicted party received pardon "based on rehabilitation"), *cert. denied*, 493 U.S. 1088, 110 S.Ct. 1156, 107 L.Ed.2d 1059 (1990).

Swanson now argues that the trial court should have excluded evidence of the 1987 Incident because it was not a conviction as required by Rule 609. Appellant's Br. at 21–22, 27. Because Swanson raises this objection for the first time on appeal, this court will reverse the trial court only if the error "prejudices the substantial rights of the defendant and would result in a miscarriage of justice if left uncorrected." *Carey*, 898 F.2d at 644.

We need not decide whether Swanson's guilty plea, two-year probation, suspended sentence, and subsequent dismissal of the case qualify as a conviction for purposes of

Rule 609(a).[4] Even if the 1987 Incident does not qualify as a conviction, its admission into evidence on cross-examination did not constitute plain error. We believe that no substantial rights were prejudiced by the admission of the evidence, and in light of the evidence presented at trial we cannot say that admission of the 1987 Incident resulted in a miscarriage of justice. *See Carey*, 898 F.2d at 644.

**B. Government Cross–Examination as to Circumstances of Guilty Plea**

 Swanson next argues that the trial court improperly permitted the government to delve into the circumstances surrounding the 1987 Incident. The government may use evidence of a prior conviction to impeach a witness if the probative value of the evidence outweighs its prejudicial effect. Fed.R.Evid. 609(a)(1). The scope of this cross-examination, however, is strictly limited in order (1) to avoid the inherent confusion that would result from the trial of collateral issues, and (2) to avoid unfairness to the witness. *United States v. Brown*, 794 F.2d 365, 366 (8th Cir.1986); *see also United States v. Roenigk*, 810 F.2d 809, 814 (8th Cir.1987).[5]

Although we acknowledge the general rule of impropriety of inquiry by the prosecutor into specific details surrounding prior convictions, "[a] different situation is presented when an accused, on direct examination, attempts to explain away the effect of the conviction or to minimize his guilt. In such cases, the defendant may be cross-examined on any facts which are relevant to the direct examination.'" *United States v. Amahia*, 825 F.2d 177, 180 (8th Cir.1987) (quoting *United States v. Wolf*, 561 F.2d 1376, 1381 (10th Cir.1977)).

On direct examination, Swanson testified, in detail, as to the circumstances surrounding the 1987 Incident and even conducted an in-

---

4. We note, without deciding the issue, that this court has held that "use of convictions for which suspended sentences were received is permissible for impeachment purposes." *United States v. Hall*, 588 F.2d 613, 615 n. 4 (8th Cir.1978); *see also United States v. Collins*, 552 F.2d 243, 247 (8th Cir.), *cert. denied*, 434 U.S. 870, 98 S.Ct. 214, 54 L.Ed.2d 149 (1977).

5. "The problem with excessive references to the details of prior criminal conduct is that the jury is more likely to infer that the defendant is more likely to have committed the offense for which he is being tried than if he had previously led a blameless life." *Roenigk*, 810 F.2d at 815 (citing 1A J. Wigmore, *Evidence* § 57 at 1185 (Tillers rev. 1983)).

court demonstration of a portion of the 1987 Incident in order to minimize the impact of the evidence. Tr.Vol. VI at 35–50; Appellant's Br. at 22. Because Swanson testified as to the detailed circumstances of the 1987 Incident, he opened the door for the prosecution's cross-examination. The prosecution cross-examined Swanson as to the circumstances of the 1987 Incident based on police reports that directly contradicted Swanson's prior testimony. We cannot say that the district court abused its discretion in permitting cross-examination of Swanson of the circumstances underlying the 1987 Incident. *See Amahia*, 825 F.2d at 180.

### C. Evidentiary Rulings Limiting Swanson's Ability to Present His Coercion Defense

Swanson also challenges evidentiary rulings that he claims improperly denied him the opportunity to prove his coercion defense. Specifically, Swanson appeals the trial court's exclusion of (1) testimony by Laurie Seracki (Seracki) that Johnson had threatened her, (2) the testimony of Ron Halverson (Halverson), and (3) evidence of a misdemeanor arrest of Brad Johnson for possession of a firearm.

### 1. *Testimony of Seracki*

 Swanson argues that the trial court improperly excluded evidence that Johnson had threatened Seracki because the threat tended to impeach Johnson's credibility and to prove that Johnson "was a man of violent

propensity." Appellant's Br. at 14.[6] Specifically, Swanson argues that Johnson's threat to Seracki was admissible under an exception to Federal Rule of Evidence 608(b) and under Federal Rule of Evidence 405(b).

The trial court mistakenly classified the threat testified to by Ms. Seracki as hearsay.[7] This court, however, may affirm the district court on any ground supported by the record even if not relied upon by the trial court. *Honey v. United States*, 963 F.2d 1083, 1090 (8th Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 676, 121 L.Ed.2d 598 (1992). The issue before this court is whether the threat excluded by the trial court was admissible for the purposes for which the appellant claims on appeal, and if it was, whether exclusion of that evidence was prejudicial.

The first basis for which appellant seeks to admit Seracki's testimony is to attack Johnson's credibility.[8] This non-hearsay purpose is precluded by Rule 608(b).[9] Appellant relies on *Osborne v. United States*, 542 F.2d 1015 (8th Cir.1976), for the proposition that where extrinsic evidence has a direct material bearing upon the crime at issue, the evidence should be admitted in spite of Rule 608(b). *Id.* at 1019. Appellant's reliance is misplaced.

In *Osborne*, two men were on trial for bank robbery. Douglas, a witness for the prosecution who had conspired with the defendants to commit the bank robbery, testified that he was with his girlfriend and with his sister at the time of the crime. *Id.* The court of appeals held that statements by Douglas's girlfriend and sister that corrobo-

---

6. "Q: Did—while you were going out, or with Brad Johnson, did at any time, did he threaten you?
[SERACKI]: Yes."
Tr.Vol. V at 149.

7. Hearsay is defined as an out-of-court statement offered for the truth of the matter asserted. Fed. R.Evid. 801(c). At trial, both parties debated whether the threat qualified as an exception to hearsay as a statement by a coconspirator made during and in furtherance of the conspiracy. Tr. Vol. V at 150–55. The parties never analyzed whether the out-of-court statement was offered for the truth of the matter asserted. A threat offered to attack credibility or to prove propensity is not offered for the truth of the matter asserted and, therefore, is not hearsay. *See* Fed. R.Evid. 801(c); *United States v. Wright*, 783 F.2d 1091, 1098 (D.C.Cir.1986). The threat would

constitute hearsay only if Swanson offered the threat to prove the truth of the words asserted. For example, admission of "I've killed before, and I'll kill you," to prove that the declarant killed before is for the truth of the matter asserted.

8. Johnson testified at trial on recross-examination: "I never threatened anybody with any kind of bodily harm or any retaliation...." Tr.Vol. V at 80.

9. Rule 608(b) states in pertinent part: "Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, other than conviction of crime as provided in rule 609, may not be proved by extrinsic evidence." Fed.R.Evid. 608(b).

rated his testimony were admissible to show that Douglas was not one of the bank robbers. *Id.* Rule 608(b) did not apply because the identity of the bank robbers was disputed and the whereabouts of Douglas at the time of the crime had a direct bearing on that material issue. *Id.*

Unlike *Osborne*, Swanson seeks to use Seracki's testimony to attack Johnson's credibility. Appellant's Br. at 20. Johnson's credibility is not directly relevant to Swanson's coercion defense. Seracki's testimony, therefore, is inadmissible as extrinsic evidence to attack the credibility of Johnson. *See* Fed. R.Evid. 608(b).

Appellant also argues that Seracki's testimony was admissible under Rule 405(b) because proving that Johnson had a character as a violent person was an essential element of his coercion defense. Swanson relies on *United States v. Barry*, 814 F.2d 1400, 1403 n. 6 (9th Cir.1987), for the proposition that character evidence may be admissible under Rule 405(a) if it is essential to proving an element of a defense. The defense of entrapment requires that the defendant had no predisposition to commit the crime. In *Barry*, the court held that evidence of character may constitute an element of the defendant's "predisposition." *Id.* That authority is inapposite.

Rule 405(b) states that: "In cases in which character or a trait of character of a person is an essential element of a charge, claim, or defense, proof may also be made of specific instances of that person's conduct." Fed.

**10.** If Swanson knew of the threat, the evidence might be admissible to demonstrate the "well grounded" nature of his fear. *See Wright*, 783 F.2d at 1098. Appellant, however, never proffered evidence that he knew of Johnson's threat to Seracki.

**11.** Appellant mistakes corroboration evidence with propensity evidence. If Seracki observed Johnson threatening Swanson, her testimony would corroborate Swanson's testimony. Seracki's testimony, however, is merely a specific isolated threat offered to prove that Johnson might have acted "in conformity therewith." This type of evidence is governed by Rule 404(b) which excludes "[e]vidence of other crimes, wrongs, or acts ... to prove the character of a person in order to show action in conformity therewith." Fed.R.Evid. 404(b).

**12.** Swanson has not argued that Seracki's testimony is admissible under Rule 404(b). We be-

R.Evid. 405(b). Appellant cites no authority, and we know of none, that requires that a defendant who claims coercion as a defense prove that the person who conducted the coercion had a violent character. To establish the defense of coercion, a defendant must demonstrate "a well-grounded fear of immediate death or serious bodily harm if the criminal act was not done" and "no reasonable opportunity to avoid performing the act without facing that danger." *United States v. Feldhacker*, 820 F.2d 279, 279 (8th Cir.1987). Proving that Johnson had a character for violence is not essential to Swanson's coercion defense.[10] Seracki's testimony merely provides evidence that Johnson may have had a propensity to threaten others.[11] Seracki's testimony, therefore, is inadmissible under Rule 405(b).[12]

### 2. *Exclusion of Halverson's Testimony*

■ Swanson also objects that the trial court excluded Halverson's testimony. We have stated that "a defendant does not have the right to call a witness to the stand simply to force invocation of the right against self-incrimination in the presence of the jury." *United States v. Doddington*, 822 F.2d 818, 822 (8th Cir.1987). At trial, Halverson's attorney informed the trial court that Halverson would assert his right under the Fifth Amendment against self-incrimination. Tr. Vol. VI at 70, 72. We find, therefore, that the trial court's exclusion of Halverson's testimony was not improper. *See Doddington*, 822 F.2d at 822.

lieve that it is a close question and note that neither party has briefed or argued this specific issue. We believe, however, that the evidence is inadmissible because Swanson sought to introduce the evidence to prove that Johnson acted in conformity with his prior threat to Seracki on other occasions. Appellant's Br. at 14 ("PROHIBITING APPELLANT FROM PROVING [JOHNSON] WAS A MAN OF VIOLENT PROPENSITY"). Rule 404(b) excludes admission of evidence for this purpose. *Wright*, 783 F.2d at 1100; *see also United States v. Reeves*, 892 F.2d 1223, 1225 (5th Cir.1990). *But see United States v. McClure*, 546 F.2d 670 (5th Cir.1977). Nevertheless, in light of the overwhelming evidence against Swanson, even if the district court should have admitted the evidence under Rule 404(b), we hold that the court's action was harmless error beyond a reasonable doubt.

**1360**

### 3. Johnson's Possession of a Firearm

█ Swanson also appeals the trial court's exclusion of evidence that Johnson had been arrested for possession of a firearm. The trial transcript does not support this contention. The trial transcript indicates that Swanson's attorney believed that the evidence was inadmissible and therefore never elicited it from any witness.[13] Appellant cannot now object that the trial court excluded testimony that appellant never attempted to introduce into evidence.

### D. Prosecutorial Misconduct

█ Finally, Swanson claims that the prosecution unfairly prejudiced the trial through a series of questions on cross-examination regarding whether Swanson had beaten his wife. The trial court sustained Swanson's objections to the three questions.[14] When reviewing an allegation of reversible prosecutorial misconduct, this court will consider whether the remarks are improper and, if so, whether the remarks prejudicially affected the defendant's substantial rights so as to deprive the defendant of a fair trial. *United States v. Andrade,* 788 F.2d 521, 530 (8th Cir.), *cert. denied,* 479 U.S. 963, 107 S.Ct. 462, 93 L.Ed.2d 408 (1986). Though touching on delicate subject matter, the prosecution had a valid reason for asking the questions, namely, to impeach Swanson's prior direct testimony. The prosecutor's questions were not improper.

### III. CONCLUSION

For these reasons, we affirm the judgment of the district court.

---

**13.** In fact, Swanson's attorney stated: "I want to talk to my client, not to say anything about Mr. Johnson's arrest for that gun." Tr.Vol. VI at 169.

**14.** "Q. Did you strike your wife on other occasions that were dismissed?
MR. MARTINEZ: Objection, Your Honor.
THE COURT: Sustained.
Q. Isn't it true, Mr. Swanson, that your wife told the police that you had struck her on previous occasions?

MR. MARTINEZ: Objection, Your Honor.
THE COURT: Sustained irrelevant.
. . . .
Q. Didn't your wife tell the police that she was at a mental health group because of your assaults?
MR. MARTINEZ: Objection.
THE COURT: Sustained."
Tr.Vol. VII at 54, 56.